## 73417. SMITH v. THE STATE.
### (351 SE2d 530)

BIRDSONG, Presiding Judge.

Melody Louise Fletcher Smith was convicted of voluntary manslaughter and sentenced to twenty years with ten to serve. She brings this appeal enumerating three asserted errors.

The facts relevant to this appeal when viewed in the light most supportive of the verdict would have authorized the jury to find the following sequence of events. Smith and her live-in companion (Hooper) went to a "night club" for an evening's entertainment. Several events had occurred during the several days prior to the evening out that precipitated an argument between the two. Smith and her male companion left the night club at about 3:00 a.m. (when the club closed) and went out into the parking lot to enter their car and drive home. As they were proceeding toward the car, their argument became more and more heated. Apparently Hooper kept turning back toward Smith and pushed at or struck her in the body telling her to "get off his back" in effect. When they arrived at the car, Hooper had become so angry and violent that he struck Smith twice in the face, the second blow knocking her to the ground. These two blows were observed by employees of the night club. They both rushed to the scene of the altercation and told Smith and Hooper to desist, get in their car and leave. When they arrived at the car, Smith was still down on the ground as a result of the second blow struck by Hooper. Hooper without saying a word, sat down in the car seat but with his feet on the pavement. He then slumped forward and it became apparent that he had been injured. As one of the employees started toward Hooper, Smith exclaimed to be wary because Hooper had a knife. She stated she had "stabbed the S. O. B." and he had taken the knife away from her. Hooper had been stabbed by a knife with a three-inch blade in the left chest and the knife had penetrated a ventricle of the heart. He expired shortly thereafter.

When Hooper was moved from the side of the car, a pocket-style knife with the blade closed was found on the ground beneath his body. Smith testified that after she and Hooper had arrived at the car, Hooper became more violent just before he struck her. Smith stated that while he was turned away from her (apparently preparing to enter the car), she saw Hooper had a knife in his rear pocket with the blade opened. Then when Hooper turned back toward her, she saw he had the knife in one of his hands. She started to struggle with him to protect herself. He struck her with the other hand and she fell. Apparently at some time during the struggle, the knife accidently penetrated his chest. She never obtained possession of the knife nor was she aware of how the wound was inflicted. Conflicting evidence was offered by Hooper's friends and relatives that Smith was known

to carry a knife as a defensive weapon whereas friends and relatives of Smith testified that Hooper was known to carry a knife and Smith did not possess or carry a knife. The trial court charged upon the legal principles of murder, voluntary manslaughter, self-defense and accident, together with other required charges but declined to give a charge upon involuntary manslaughter. *Held*:

1. In her first enumeration of error, Smith complains the trial court erred in allowing evidence before the jury that she had carried a knife routinely as a defensive weapon as improperly putting her character in issue before the jury. We find no merit in this enumeration. The conflicting evidence before the jury would have justified the jury in believing that Smith had perpetrated a malice murder, a felony murder, or voluntary manslaughter if the State's version was accepted. Contrariwise, if the jury fully accepted Smith's version, an accidental homicide would have resulted in an acquittal. Who possessed the knife was the crucial question that made one story or the other plausible.

Any evidence is relevant which logically tends to prove or to disprove any material fact which is at issue in the case, and every act or circumstance serving to elucidate or throw light upon a material issue or issues is relevant. *Allen v. State*, 137 Ga. App. 755, 756 (224 SE2d 834). Evidence, if otherwise admissible, does not become inadmissible because it incidentally puts the appellant's character in issue. *Whippler v. State*, 218 Ga. 198, 200 (126 SE2d 744). Thus, evidence which is relevant and responsive to the issues but which minimally places the character of the defendant into issue is nevertheless admissible inasmuch as the relevancy of the testimony outweighs any prejudice it might cause. *Payne v. State*, 233 Ga. 294 (210 SE2d 775); *Parker v. State*, 145 Ga. App. 205 (4) (243 SE2d 580).

2. Smith next argues that the trial court erred in failing to give a requested charge upon the lesser included offense of involuntary manslaughter.

Once again, we find this enumeration to be without merit. "Where a defendant uses a [three-inch knife to stab a person in the heart] . . . in an unlawful manner, he or she is guilty of a crime, reckless conduct . . . [OCGA § 16-5-60 . . .], and thus the act is not a lawful act within the meaning of . . . [OCGA § 16-5-3 (b)]. . . . The soundness of this reasoning is undeniable, and leads inevitably to this conclusion: a defendant who seeks to justify homicide under the self-defense statute, OCGA § 16-3-21 . . . is not entitled to an additional instruction on involuntary manslaughter in the course of a lawful act (OCGA § 16-5-3 (b) . . .) whatever the implement of death. . . . For if he is justified in killing under OCGA § 16-3-21 . . . he is guilty of no crime at all. If he is not so justified, the homicide does not fall within the "lawful act" predicate of OCGA § 16-5-3 (b) . . . for the

jury, in rejecting his claim of justification, has of necessity determined thereby that the act is not lawful." (Emphasis deleted.) *Saylors v. State*, 251 Ga. 735, 737 (3) (309 SE2d 796). See also *Ward v. State*, 252 Ga. 85, 88 (1) (311 SE2d 449).

Likewise, as to the other predicate for involuntary manslaughter, the causing of a homicide during the commission of an unlawful act other than a felony, disregarding as we must the theory of accident and/or self-defense, the stabbing of another in the chest in the vicinity of the heart constitutes an aggravated assault, obviously not an act amounting to a misdemeanor. Thus under either predicate, the trial court did not err in refusing the charge. *Ward v. State*, supra at p. 87 (1).

3. In her last enumeration of error, Smith contends that because the jury requested a recharge upon the meaning of the several forms of verdict offered to them as possible verdicts, the jury was confused and the recharge was not adequate to remove the confusion. The record does not support this contention. The jury indicated it would like to have an explanation of the four possible verdicts in writing rather than attempt to recollect the charge as given orally. It did not indicate it suffered from confusion. Moreover, after the recharge of the jury and in response to the inquiry by the trial court as to whether the defense had any objections to the recharge, counsel replied that there were no objections other than to a charge on felony murder which was nothing more than a reiteration of a previously made objection. Considering that Ms. Smith was acquitted of the murder charge, this charge, even if error, would have been harmless. See *Henderson v. State*, 134 Ga. App. 898 (1) (216 SE2d 696); *Maloy v. Dixon*, 127 Ga. App. 151, 155 (193 SE2d 19). More importantly, appellant waived any potential error not only by failing to object to the recharge but also affirmatively responding to the inquiry of the court that she had no objections to the recharge. See *White v. State*, 243 Ga. 250 (253 SE2d 694).

*Judgment affirmed. Banke, C. J. , and Sognier, J., concur.*

DECIDED DECEMBER 4, 1986.

*Linda B. Borsky*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Assistant District Attorney*, for appellee.